ESCOTT, Appellant,

v.

TIMKEN COMPANY, Appellee.

[Cite as *Escott v. Timken Co.*, 153 Ohio App.3d 529, 2003-Ohio-3370.]

Court of Appeals of Ohio,
Fifth District, Stark County.

No. 2003CA00004.

Decided June 23, 2003.

Paul R. Reiners, for appellant.

Jill C. McQueen and Jack B. Cooper, for appellee.

WISE, Judge.

{¶ 1} Appellant Mark D. Escott appeals from the judgment of the Court of Common Pleas, Stark County, which granted summary judgment in favor of appellee Timken Company, appellant's former employer. The relevant facts leading to this appeal are as follows.

{¶ 2} Appellant commenced employment with appellee Timken Company in 1979. In 1999, appellant began a position at appellee's plant in New Philadelphia, Ohio, as a senior process analyst. On November 6, 2001, appellant met with his supervisor, Michael Dreher, at about 8:15 a.m. During that meeting, Dreher stated his displeasure concerning appellant's direction of a memo to a company

vice-president, Mike Hill, without the provision of a copy for Dreher. Appellant became angry about Dreher's criticism. Appellant thereupon telephoned his wife, Pamela, sometime between 8:30 and 8:45 a.m., stating that he wanted to quit his job. Pamela suggested that appellant instead take some vacation time to "cool off." Nonetheless, at approximately 9:30 a.m., appellant appeared in Dreher's office and told him he wished to speak with the plant manager. Dreher informed appellant that the plant manager was on vacation. Appellant told Dreher that he had "had it" with appellee and wanted to resign his employment. Dreher suggested that appellant speak with Jeffrey Meo, the human resources person at the New Philadelphia plant. Appellant proceeded to Meo's office. Appellant advised Meo that he was going to quit and that Dreher wanted him to schedule an exit interview.

{¶ 3} Following his discussion with Meo, appellant began putting items from his office in a box. Appellant also deleted files from his computer. During this time, Dreher visited appellant's office, stating he was "sorry it has to end this way." Appellant gave Dreher his computer, company badge, company credit card, and various access cards. Meo thereafter came into appellant's office and conducted an exit interview with Dreher present. He also recorded appellant's answers in an exit interview questionnaire. Appellant therein stated, inter alia, that his job duties were beneath his qualifications and that he had received inadequate direction and feedback from his supervisors. Appellant further went into Dreher's office and returned some reference books he had previously borrowed. He then left the plant at approximately 11:00 a.m.

{¶ 4} A couple of hours later, in the early afternoon of November 6, 2001, appellant apparently had second thoughts about his earlier actions. After further discussion with Pamela, who coincidentally was employed at one of appellee's Canton, Ohio plants, appellant reported to the medical department at the Canton plant. However, appellee's medical personnel told appellant he could not see the company doctor because of his resignation.

{¶ 5} On January 22, 2002, appellant filed a complaint against appellee for declaratory judgment, breach of contract, and fraud. Appellant thereafter voluntarily dismissed the complaint but refiled a similar complaint on July 26, 2002. On September 30, 2002, appellee filed a motion for summary judgment. A hearing was conducted thereon on November 22, 2002. On December 12, 2002, the trial court granted appellee's motion for summary judgment.

{¶ 6} Appellant timely appealed, and herein raises the following two assignments of error:

{¶ 7} "I. The trial court erred by granting summary judgment to appellee/employer and finding that appellant/employee validly terminated his at-will employment relationship with the appellee, when reasonable minds could con-

clude that the appellant did not have the requisite mental capacity to terminate that relationship.

{¶ 8} "II. The trial court erred by holding that mental capacity is not required of an employee to terminate an at-will employment relationship."

{¶ 9} We will address the aforesaid assignments of error in reverse order.

{¶ 10} In his second assignment of error, appellant contends that the trial court erred as a matter of law in holding that an employee's mental capacity to understand the nature and consequences of his or her actions is not a prerequisite to a valid termination of an at-will employment relationship. We disagree.

{¶ 11} It is well established that a party seeking to void a contract on grounds of incapacity has the burden of proof by clear and convincing evidence. *DiPietro v. DiPietro* (1983), 10 Ohio App.3d 44, 46, 10 OBR 52, 460 N.E.2d 657. Ohio courts have, for example, analyzed issues of mental capacity in relation to the conveyance of real property (*Yommer v. Combs* [Aug. 27, 1998], Monroe App. No. 773, 1998 WL 574759), a testator's drafting of a will (*Niemes v. Niemes* [1917], 97 Ohio St. 145, 119 N.E. 503), the designation of beneficiaries in a retirement account (*Cameron v. State Teachers Retirement Bd.* [Nov. 30, 2000], Franklin App. No. 00AP–425, 2000 WL 1753116), and the election of a pension payout in a public employee retirement plan (*Buzzard v. Pub. Emp. Retirement Sys. of Ohio* [2000], 139 Ohio App.3d 632, 745 N.E.2d 442). In the case sub judice, appellant, who concedes that his status was that of an at-will employee, essentially urges us to apply a similar mental-capacity threshold to his resignation actions of November 6, 2001, which he equates to "contractual activity."

{¶ 12} The scenario presented in the matter sub judice appears to be a case of first impression in Ohio. Generally, under Ohio law, at-will employment relationships may be terminated by either party at any time for any reason not contrary to law. *Bucher v. Sibcy Cline, Inc.* (2000), 137 Ohio App.3d 230, 235, 738 N.E.2d 435. "This doctrine is an offspring of the ancient law of master and servant. The servant is required to perform his duties at the discretion of the employer and the law will not involve itself with disputes concerning the terms and conditions of the employment relationship. The master-servant (employer-employee) relationship is, of course, a mutual bargain. The employer may at any time discharge the employee, and, contrariwise, the employee may at any time leave his employment (indentured servitude and involuntary servitude having happily passed into America's past)." *Bauer v. Pottsville Area Emergency Med. Serv., Inc.* (Pa.Super.2000), 758 A.2d 1265, 1272 (Cavanaugh, J., concurring and dissenting).

{¶ 13} The Ohio Supreme Court has expanded an exception to the at-will-employment doctrine when an employee discharge violates a "clear public policy."

*Painter v. Graley* (1994), 70 Ohio St.3d 377, 639 N.E.2d 51. Nonetheless, appellant again concedes that he acted to resign from his job, as opposed to being terminated by appellee. Moreover, this case was not couched as a discrimination action based on appellant's alleged mental disability; rather, appellant sought "the protection of having requisite mental capacity or competency before his actions relating to the employment relationship become binding on him." Appellant's Brief at 14. We find that crafting this form of "protection" could effectively force employers to bar temporarily at-will employees from terminating undesired employment until such time as those employees are declared capable of doing so. We conclude that such a result would come precipitously close to violating Ohio's ban on involuntary servitude found in Section 6, Article I of the Ohio Constitution.

{¶ 14} Accordingly, the trial court did not err in holding that an employer's consideration of an employee's mental capacity is not a prerequisite to a valid termination of an at-will employment relationship.

{¶ 15} Appellant's second assignment of error is overruled.

{¶ 16} In his first assignment of error, appellant argues that the trial court erred in granting summary judgment in favor of appellee. We disagree.

{¶ 17} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as did the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 30 OBR 78, 506 N.E.2d 212. We must therefore refer to Civ.R. 56, which provides: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *" A summary judgment shall not be rendered unless it appears from the evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.

{¶ 18} Pursuant to the above rule, a trial court may not enter summary judgment if it appears that a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the nonmoving party has no evidence to prove its case. The moving party must specifically point to some evidence that demonstrates that the nonmoving party cannot support its claim. If the moving

party satisfies this requirement, the burden shifts to the nonmoving party to set forth specific facts demonstrating that there is a genuine issue of material fact for trial. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264.

{¶ 19} Appellant's arguments are centered on his proposition that the evidence presented created questions of material fact upon which reasonable minds could differ on the issue of appellant's mental capacity. In his reply brief, appellant reiterates that "[t]his appeal asserts that the trial court erred by not finding a requirement for mental capacity or competency in the formation or termination of an at-will employment relationship." Reply Brief at 1. Further analysis of the evidence by this court as per *Smiddy*, supra, is unnecessary based on our holding on the legal issue presented in appellant's second assignment of error above.

{¶ 20} Appellant's first assignment of error is therefore overruled.

{¶ 21} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.

Judgment affirmed.

GWIN, P.J., and WILLIAM B. HOFFMAN, J., concur.